IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RA INVESTMENTS I, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-1565-G |
| | § | |
| DEUTSCHE BANK AG, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's Standing Order of Reference, entered December 22, 2004, BDO Defendants' Motion to Compel the Return of Privileged Document ("Motion to Compel"), filed December 20, 2004, has been referred to the United States Magistrate Judge for hearing, if necessary, and for determination. The Court held a hearing on January 11, 2005 and took the motion under advisement. Defendants BDO Seidman, LLP ("BDO"), Robert J. Dudzinsky, and Neil Rosenbaum (collectively the "BDO Defendants") have filed Supplemental Brief and Additional Authority in Support of Their Motion to Compel Return of Privileged Document on February 24, 2005, and Second Supplemental Brief and Additional Authority in Support of Their Motion to Compel Return of Privileged Document on April 11, 2005, in order to inform this Court of the recent decisions rendered in other courts regarding the privileged nature of the document at issue. Having considered the Motion to Compel, the supplemental briefs, the appendices, the responses, and the applicable law, the Court determines that the Motion to Compel is **GRANTED**.

## I.     Background

The BDO Defendants filed the Motion to Compel asking the District Court to (1) uphold

the attorney-client privilege of a memorandum (the "Kerekes Memo") prepared by BDO

principal, Michael Kerekes, (2) compel the return of all copies of the Kerekes Memo, and (3)

prevent Plaintiffs[1] from any further use or dissemination of the Kerekes Memo.  (Defs.' Br. at 2-

3.)  The Kerekes Memo analyzes the possible effects of proposed amendments to IRS

regulations, and was addressed to David Dreier, an attorney at White & Case, LLP, and to

BDO's Tax Solutions Opinion Committee.  *Id.* at 3.  In connection with a class settlement,

Jenkens & Gilchrist ("Jenkens"), a codefendant of BDO in *Denny v. Jenkens & Gilchrist*,

produced the Kerekes Memo to Plaintiffs' counsel, who are also lead class counsel.  (Pls.' Br. at

1); (Defs.' Mot. at 3); *Denny v. Jenkens & Gilchrist*, No. 03 Civ. 5460 (SAS), 2004 U.S. Dist.

LEXIS 23881 (S.D.N.Y. Nov. 23, 2004).  Donna Guerin of Jenkens asserts that Robert Greisman

of BDO faxed her a copy of the Kerekes Memo.  (Pls.' App. at 18.)  Plaintiffs sought to use the

Kerekes Memo in support of the Affidavit of Jeven R. Sloan (the "Sloan Affidavit") in Support

of Plaintiffs' Response to Deutsche Bank and BDO's Motions, Plaintiffs' Response to the BDO

Defendants' Motion to Compel Arbitration, and Plaintiffs' Response in Opposition to the BDO

Defendants' Emergency Motion to Strike.  (Defs.' Mot. at 2.)

---

[1] The Plaintiffs referred to herein are: RA Investments I, LLC; Roger J. Anderson; Debbie A. Anderson; RA Investment Partners; RA Investors, Inc.; Yoram Avneri; Yael Avneri; Triangle Property, Ltd.; Triangle Property Management, Inc.; Triangle Property 07, Ltd.; Raymond E. Davis; Wilma A. Davis; RE Davis, LLC; WA Davis, LLC; RE Davis Investment Partners; Dallco Marketing, Inc.; Richard Dusansky; Abigail November Dusansky; RD Toreador Partners, Inc.; RD Toreador Partners; William D. Griffith; Wendy M. Griffith; WG Kiowa Investments, LLC; WG Kidwell Investments, LLC; WWG Investment Partners; Kiowa Investors, Inc.; Robert D. Jacoby; RDJ Investments, LLC; Jacoby Investments; Jacoby, Inc.; RD Toreador Investments, LLC; Christopher D. Kopf; Francene Kopf; CDKopf13, LLC; CDKopf13, Partnership; CDKopf13 Investors, Inc.; John M. Luscomb; JML Investments, LLC; J & R Investment Partners; Lusco, Inc.; Ivan Jack Miller; Daniel Govberg; Jeffrey Govberg; IJM Westover Investments, LLC; Arrownorth Investment Partners; PFW, Inc.; DG Arrowmink Investments, LLC; JG Northwick Investments, LLC; Arrownorth Investors, Inc.; John R. Overturf; Julie M. Overturf; 1230 LC Two No. 24, LLC; Overturf Family Enterprises, Inc.; 5290, Ltd.; Mark Rose; Lydia Rose; Gail Rose; MR Vandelia Investments, LLC; Esor Capital; M & L Rose Enterprises, Inc.; LR Briarwood Investments, LLC; GR Wentwood Investments, LLC; Brian Seals; Linda Seals; BS Dublin Creek Investments, LLC; THKS Investment Partners; BLS Creek Corporation; William W. Wilson; Sandra C. Wilson; The Francis Willson, LLC; Willson Family Holdings; Willson Investors, Inc.; Leslie O. Paull; Ellen H. Paull; LOPI, LLC; Weston Partners; No. Weston Investors, Inc..

The BDO Defendants assert that Plaintiffs' response to the BDO Defendants' motion to compel arbitration, the Sloan Affidavit, and Plaintiffs' response to the BDO Defendants' first motion to strike should not be disclosed to the public because the Kerekes Memo, which is quoted from, cited to, and attached to these documents, is protected by the attorney-client privilege. *Id.* On December 22, 2004, the District Court granted the BDO Defendants' motions to place the Kerekes Memo and any documents referencing it under seal until the privilege issue has been resolved. (Mem. Order at 8.)

## II.     Analysis

### A.      Privileged Nature of the Document

The attorney-client privilege protects communications: "(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection be waived." *United States v. El Paso Co.*, 682 F.2d 530, 538 n.9 (5th Cir. 1982) (citation omitted). *See also United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994) ("Where the [attorney-client] privilege exists, it 'protects communications from the client to the attorney made in confidence for the purpose of obtaining legal advice.'" (quoting *Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985))).

The Kerekes Memo is addressed to BDO's then outside counsel, David Dreier, and discusses the possible ramifications of proposed amendments to IRS regulations on BDO and its clients. (Defs.' Mot. at 3.) The Kerekes Memo then concludes with Michael Kerekes soliciting comments or alternative interpretations. *Id.* at 7, 19. Therefore, it appears that the author of the

memo and client, Michael Kerekes, was seeking legal advice from a professional legal advisor

acting in his capacity, David Dreier.  Furthermore, the content of the Kerekes Memo is related to

the purpose of seeking legal advice in that Michael Kerekes was seeking comments regarding his

interpretations of the proposed amendments to the IRS regulations.  It also appears that the

communication was made in confidence in that it was only addressed to select BDO employees

and to their then outside counsel.  Therefore, the Kerekes Memo is protected by the attorney-

client privilege if the protection was not otherwise waived.

### B.     Disclosure of the Document

Even if information is protected by the attorney-client privilege, the voluntary disclosure

of that information waives the privilege.  *See Ward v. Succession of Freeman*, 854 F.2d 780, 787

(5th Cir. 1988).

The BDO Defendants assert that the Kerekes Memo was not voluntarily disclosed to

Jenkens, and that the facts surrounding the alleged disclosure weigh against a showing that the

disclosure was voluntary.  (Defs.' Mot. at 9.)  Specifically, the BDO Defendants point out that

the faxed copy of the Kerekes Memo that Plaintiffs claim that Robert Greisman provided to

Jenkens (1) is missing the fax coversheet; (2) appears to be missing four pages; (3) has the fax

confirmation text redacted, hiding the sender's information; and (4) was faxed out of sequence in

that the last three pages were faxed forty minutes before the first four pages.  *Id*.  Thus, the BDO

Defendants assert that if the copy of the Kerekes Memo was transferred to Jenkens in an

authorized manner, these anomalies would not exist.  *Id*. at 10.  Although the affidavits of Donna

Guerin allege that Robert Greisman, the BDO Defendants assert that Ms. Guerin has not

explained why this document has the anomalies that were lacking in the other documents that

Ms. Guerin states were faxed to her by Mr. Greisman.  *Id.*  The BDO Defendants also state that

Plaintiffs have not offered any evidence that Ms. Guerin billed time for receiving and reviewing

the Kerekes Memo.  *Id.* at 11.

The Plaintiffs state that the BDO Defendants cannot dispute Donna Guerin's testimony

since the BDO partners have only claimed that they do not recall sending the Kerekes Memo to

Jenkens, whereas, Donna Guerin has testified that she received the Kerekes Memo from Robert

Greisman.  (Pls.' Br. at 12.)  Furthermore, Plaintiffs point out that Donna Guerin also produced a

different memo sent by Robert Greisman on the same topic around the time he allegedly sent the

Kerekes Memo and that Mr. Greisman first denied having sent this other memo and then later

admitted sending it.  *Id.*  The Plaintiffs also state that Mr. Greisman's notes from the meeting in

Los Angeles on the date that the Kerekes Memo was allegedly sent support Ms. Guerin's

testimony because Mr. Greisman's notes show that he attended a BDO Tax Opinion Committee

meeting and that he was assigned the task of resolving issues addressed in the Kerekes Memo

with Jenkens.  *Id.* at 14.  Thus, Plaintiffs point out that this is in line with Ms. Guerin's testimony

that Mr. Greisman sent her the Kerekes Memo because he wanted Jenkins to reconsider the

content of the opinion letters that Jenkins was going to send to its clients so that it would be

more in line with the text of BDO's memos that BDO was planning on sending to the same

clients.  *Id.*

Upon carefully considering the facts and arguments presented by both parties, this Court

determines that the disclosure of the Kerekes Memo was not voluntary.  The unusual nature of

the fax transmission convinces the Court that the Kerekes Memo was in fact sent inadvertently.

The pages of the faxed copy of the Kerekes Memo were not merely "shuffled" as Plaintiffs

contend (*Id*. at 12), but the last three pages were faxed forty minutes prior to the first four pages (Defs.' Mot. at 9). On this point, Ms. Guerin's affidavit simply states that she has "no knowledge of how the pages came to be shuffled or were faxed in the order that they were." (Pls.' App. at 18.) The fax coversheet would be quite helpful in this dispute, but Ms. Guerin states in her affidavit that she has "been unable to locate the [f]ax [c]oversheet that Mr. Greisman sent with the BDO Memorandum." *Id*. In regard to the sender information on the fax, Donna Guerin's Affidavit states that "[n]o phone number has been redacted from the document; [but] the original document does not bear a phone number." *Id*. It seems quite unusual to the Court that the faxed document at issue is lacking all sender information, in addition to being faxed in the unusual manner described above. These characteristics in combination with the other points raised by the BDO Defendants lead the Court to find that the fax was sent inadvertently.

>    **C.     Circumstances Surrounding the Disclosure**

In the case of inadvertent disclosures of privileged information, "an analysis which permits the court to consider the circumstances surrounding a disclosure on a case-by-case basis is preferable to a *per se* rule of waiver." *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993). "This analysis serves the purpose of the attorney client privilege, the protection of communications which the client fully intended would remain confidential, yet at the same time will not relieve those claiming the privilege of the consequences of their carelessness if the circumstances surrounding the disclosure do not clearly demonstrate that continued protection is warranted." *Id*.

The Fifth Circuit has approved the utilization of the *Hartford* test in analyzing the

privileged nature of information disclosed involuntarily. *Alldread*, 988 F.2d at 1434 ("[W]e conclude that the district court's decision to analyze the issue under the *Hartford* test was proper."). Under the *Hartford* test, "consideration is given to all of the circumstances surrounding the disclosure, including: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Id*. at 1433 (citing *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323 (N.D. Cal. 1985)).

Having determined that the Kerekes Memo was not transmitted voluntarily, this Court considers all of the circumstances surrounding the disclosure, including the precautionary and remedial measures taken, the extent of the disclosure, and the issue of fairness in order to determine whether the privilege has been waived. *See Alldread*, 988 F.2d at 1433. The Court is not aware of the precautionary measures taken by BDO to prevent the initial disclosure of the Kerekes Memo. Furthermore, Plaintiffs assert that BDO's failure to seek the return of the Kerekes Memo after it received notice of its disclosure for over three and a half years amounts to a waiver of any privilege that may have attached to it. (Pls.' Br. at 18-19.) The BDO Defendants have not addressed this point raised by the Plaintiffs. It does appear however, that the BDO Defendants have fairly recently vigorously sought to assert the privilege as to the Kerekes Memo before this Court and a number of other courts. *See Miron v. BDO Seidman, LLP*, Civil Action 04-968, 2004 U.S. Dist. LEXIS 22101 (E.D. Pa. October 19, 2004); *Denny v. Jenkens & Gilchrist*, No. 03 Civ. 5460 (SAS), 2004 U.S. Dist. LEXIS 23881 (S.D.N.Y. Nov. 23, 2004); *United States v. BDO Seidman, LLP*, No. 02-C-4822, 2004 WL 1470034 (N.D. Ill. June 29, 2004); *Mathewson v. BDO Seidman, LLP*, No. CGC-04-434495 (Ca. Super. Ct. Feb. 10,

7

2005).

It appears that BDO possibly could have taken more steps to protect the privilege of the Kerekes Memo. However, considering that a great deal of uncertainty surrounds the cause of the disclosure of the Kerekes Memo and considering the importance of preserving the confidentiality of communications to counsel intended by a client to remain confidential, this Court, upon careful consideration, determines that the privilege has not been waived. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) ("Because of the importance of the attorney-client privilege, we pause to reaffirm that the privilege serves the valuable purpose of encouraging full and frank communication between clients and their attorneys, thereby promoting the broad public interest in the observance of law and the administration of justice." (citing *El Paso Co.*, 682 F.2d 530 at 538)); *Alldread*, 988 F.2d at 1433-35 ("The magistrate judge concluded that the City had not taken reasonable and available precautions to protect the materials from disclosure, that . . . the City could reasonably have discovered any privileged materials, and that the disclosure was complete . . . . Nevertheless, the magistrate judge concluded that other considerations outweighed those factors and favored a finding that there had been no waiver . . . . [W]e cannot say that the district court erred in finding that there was no waiver under the circumstances.").

### D.    Crime-Fraud Exception

Plaintiffs assert that since the Kerekes Memo falls under the crime-fraud exception, any privilege attached to it should be removed. (Pls.' Br. at 23-24.) "Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or fraudulent activity."

8

*United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002) (internal quotations and citations omitted).  Upon due consideration and an in camera review of the Kerekes Memo, this Court is not able to conclude that the crime-fraud exception is applicable.  Therefore, the attorney-client privilege shall be preserved.

## III.    Conclusion

For the reasons stated above, this Court determines that the Motion to Compel is **GRANTED**.

**SO ORDERED.**  June 1, 2005.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE